## 66299. HYLES v. COCKRILL.

CARLEY, Judge.

The facts relevant to this medical malpractice case are as follows: Mrs. Martin was admitted to the hospital for an illness unrelated to the instant controversy. A routine chest x-ray of Mrs. Martin revealed an enlargement of a mediastinal node in the region of the azygos vein. The mass was approximately three and one-half centimeters in diameter. The radiologist recommended that Mrs. Martin "have tomograms as well as supine and upright chest films to see if there was a change in the characteristics of this lesion on x-ray." The fact that changes in the characteristics of the mass occurred during this procedure confirmed the radiologist's initial diagnosis that the mass was a nonvascular, soft tissue mass. He then recommended that a mediastinoscopy be performed for the purpose of viewing the obstruction.

The mediastinoscopy was performed on Mrs. Martin by Dr. Love on April 4, 1977. Dr. Love, who testified at trial concerning the procedure, stated that after passing the mediastinoscope through an incision at the base of Mrs. Martin's neck, he located the trachea and followed it down by viewing through the scope. Two small nodes were located and removed for diagnosis of possible malignancy. Dr. Love then located a third node which he decided should also be removed. At this point, the suspected mass shown on the tomogram had not yet been located. After the third node was removed, bleeding occurred. The bleeding would not clot, and it was necessary for Dr. Love to perform surgery through Mrs. Martin's chest to stop the bleeding. After the chest was opened, it was determined that the source of bleeding was a tear at the junction of the azygos vein and the vena cava. The tear was sutured and the bleeding was stopped.

On April 12, 1977, eight days after undergoing the mediastinoscopy procedure, Mrs. Martin suffered respiratory and cardiac arrest. Subsequently, Mrs. Martin demonstrated symptoms of brain damage.

Lucille Martin, by next friend, instituted the instant medical malpractice case against Dr. Love, who is now deceased and whose executor is the appellee here. A jury trial resulted in a verdict in favor of appellee. A timely notice of appeal from the judgment was filed. Mrs. Martin died subsequent to the filing of her notice of appeal, and Mark Hyles, her duly appointed and qualified administrator, has been substituted as the appellant in the instant case.

1. The first enumeration asserts that the trial court erred in excluding certain testimony by appellant's expert witness on direct examination. The testimony objected to, which concerned the

witness' opinion that Mrs. Martin suffered from cerebral anoxia, was excluded on the ground that a proper foundation had not been laid. "It is a sound rule that a judgment will not be reversed on an exception (and, a fortiori, in the absence of an exception) to the refusal of the trial court to allow a competent witness to testify, where the record does not show what testimony the witness was expected to give. [Cits.]" *McLendon Elec. Co. v. McDonough Constr. Co.*, 145 Ga. App. 137, 142 (3) (243 SE2d 537) (1978), reversed on other grounds, 242 Ga. 510 (250 SE2d 424) (1978). Accordingly, since appellant failed to state what testimony the witness was expected to give, the issue was not properly preserved for appellate consideration. *Page v. Brown*, 192 Ga. 398, 401 (6) (15 SE2d 506) (1941); *Anderson v. Jarriel*, 224 Ga. 495, 496 (3) (162 SE2d 322) (1968); *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 152 (10) (269 SE2d 426) (1980).

2. During the trial, Dr. Galloway testified by way of deposition as an expert witness for appellee. Appellant contends that during cross-examination of this witness, the trial court erred in sustaining appellee's objection to the following question: "And being a conscientious surgeon you feel that recognized standard medical and surgical care would require you to inform a patient about the possible complications before you do it so that they may have a chance to make a choice whether they want to undergo the procedure?"

It is clear that this question was an attempt to put before the jury the issue of the "informed consent doctrine." The informed consent doctrine is, however, not a viable principle of law in this state. *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660 (222 SE2d 162) (1975); OCGA § 31-9-6 (Code Ann. § 88-2906). "While the attending physician is required to inform his patient of the general terms of treatment, this duty does not require a disclosure of the risks of treatment. [Cit.]" *Fox v. Cohen*, 160 Ga. App. 270 (1) (287 SE2d 272) (1981); *Young v. Yarn*, 136 Ga. App. 737 (1) (222 SE2d 113) (1975). Accordingly, the trial court did not err in excluding testimony by appellant's expert witness concerning his adherence to a practice of informed consent. See generally *Simpson v. Dickson*, 167 Ga. App. 344 (306 SE2d 404) (1983).

3. Dr. Anylyn, a California surgeon, testified at trial by way of deposition as an expert witness for appellant. Appellant asserts that the following testimony elicited from Dr. Anylyn on cross-examination was erroneously allowed into evidence: Question: "Medicine is not such a perfect science that doctors are willing to guarantee their judgments on the success of their best efforts for a patient as a general rule? Answer: Yeah, correct." Appellant objected on the ground that the question was misleading.

Georgia courts have repeatedly held that "[t]he law recognizes

that medicine is an inexact science at best and all a doctor may do is to assist nature in accordance with the present state of medical experience. "The fact that treatment has resulted unfavorably does not raise even a presumption of want of proper care, skill, or diligence.' [Cits.]" *Hayes v. Brown,* 108 Ga. App. 360 (1) (133 SE2d 102) (1963). While it would not be appropriate to charge the jury in the language used in the challenged question, (see *Blount v. Moore,* 159 Ga. App. 80 (1) (282 SE2d 720) (1981)), we find no error in permitting testimony in that regard.

4. Appellant next asserts that the trial court erred in striking the following testimony of appellant's expert, Dr. Anylyn: "Question: Do you have any criticism of the factual finding by the radiologist on the report that you have read? Answer: Yes, I find that it is not complete enough. Question: Will you tell me precisely the facts that support your conclusion to that effect? Answer: I will have to bring in the opinion of our radiologist. Question: Then your answer is based, in part, upon that of the radiologist here at this hospital? Answer: That's correct." The trial court excluded the above quoted testimony on the ground that the expert's expressed opinion was impermissibly based, in part, on the opinion of another.

The law in Georgia is that "[a]n expert may give an opinion upon the *facts* testified to by other witnesses, but not upon *their opinions.*" *Walker v. Fields,* 28 Ga. 237 (2) (1859). "A witness' opinion must be his own and he cannot act as a mere conduit for the opinions of others. [Cit.]" *Stephen Brown Radiology Assoc. v. Gowers,* 157 Ga. App. 770, 780 (5) (278 SE2d 653) (1981). In the instant case, it is clear that the expert witness was basing his opinion, at least in part, on the *opinion* of a radiologist in California, and *not upon facts* as given to him by that radiologist. While the radiologist in California was not a witness at trial, and therefore we are not faced with the situation where an expert bases his opinion upon the opinion "testified to by other witnesses," the case at bar is still controlled by the rationale of the general rule that an expert may not base his opinion upon the opinion of another, especially an opinion which is not even testified to at trial. See generally Green, Ga. Law of Evidence (2nd ed.), § 111.

It was not error, therefore, for the trial court to exclude the testimony. Compare *Life Ins. Co. of Ga. v. Dodgen,* 148 Ga. App. 725, 729 (3) (252 SE2d 629) (1979) where the opinion of a treating physician was included in records and reports, and "formed a part of the background for professional expert'[s] opinion" who testified at trial. Appellant's reliance on *City of Atlanta v. McLucas,* 125 Ga. App. 349 (187 SE2d 560) (1972) and *Ga. Power Co. v. Edwards,* 136 Ga. App. 135 (220 SE2d 460) (1975) is misplaced because, as stated above, unlike those cases, appellant's expert was not basing his

opinion on *facts* as told to him by others.

5. Appellant next asserts as error the admission of testimony regarding the generally accepted opinion of thoracic surgeons as to whether "aspiration should or should not be done before biopsying any given node." On the record before us, "[i]t was not error to admit this testimony, as similar evidence of other witnesses was admitted without objection. [Cit.]" *Hammond v. Paul,* 249 Ga. 241, 242 (290 SE2d 54) (1982). See also *Sikes v. Wilson,* 74 Ga. App. 415 (39 SE2d 902) (1946).

6. During appellant's cross-examination of the radiologist who made the x-rays and tomograms of Mrs. Martin's chest, appellee successfully objected to a hypothetical question propounded to the witness. Appellee's objection was sustained on the basis that the question assumed a fact not in evidence. OCGA § 24-9-67 (Code Ann. § 38-1710). Specifically, the fact which was assumed in the question as propounded by appellant but which appellee asserts was not in evidence was that the mass as shown in the presurgery x-rays and tomogram was suspected to be vascular in nature. Appellee argues that there was no evidence of record that the mass as seen in the x-rays and tomograms was suspected to be vascular, but, to the contrary, was suspected at all times before surgery to be a soft tissue mass.

The only evidence of record that could arguably support appellant's position that before surgery the mass was suspected to be vascular in nature is found in the "readmission history and physical" report made by Dr. Love prior to the surgery on Mrs. Martin. In that report, under the word "impression," was typed "enlarged azygos *vein* in the mediastinum by the right lung." However, the word "*vein*" had been crossed out and the word "*node*" had been written over it. Dr. Love testified at trial that the report was dictated by him, typed by someone else, and returned to him some time later. He further stated that it is the duty of the surgeon to read over the report to make certain that it was correctly transcribed. When reading over the report, he noticed that the word "vein" should have read "node," and he made that correction along with several corrections on the report at that time. The corrections were made long before a claim was made against him by Mrs. Martin. Dr. Love further testified that at no time prior to or during the mediastinoscopy did he suspect that the mass was part of the azygos vein or vascular in nature. Under this state of the record, we do not find sufficient evidence that the mass was suspected to be vascular in nature so as to authorize the assumption of such "fact" in the hypothetical question propounded. See *Kuttner v. Swanson,* 59 Ga. App. 818, 824 (8) (2 SE2d 230) (1939). Accordingly, the trial court did not err in prohibiting an answer to the

improper hypothetical question.

7. Appellant's seventh enumeration of error asserts that an answer to a hypothetical question asked on direct examination of an expert witness for appellee was erroneously allowed into evidence over objection. Appellant objected to the lengthy hypothetical question on the ground that it contained a fact not then of record. OCGA § 24-9-67 (Code Ann. § 38-1710). The hypothetical question, which was premised upon the exact movements made by Dr. Love during the mediastinoscopy immediately before the hemorrhaging began, contained the assumption "that the surgeon released the pressure of the scope and was *lifting on the scope* to withdraw this third node." Appellant asserts that there was no evidence of record that the tear of the azygos vein was occasioned by or occurred during the *lifting of the head of the scope.*

A careful review of the record reveals that, in fact, there are several references in the record, prior to the hypothetical question, to the effect that Dr. Love was *lifting on the scope* to withdraw the third node when the hemorrhaging began. To serve as but one example, Dr. Love testified on cross-examination as follows: "Question . . . [H]ow, if [the third node you were biopsying] was the last thing you saw before you got the hemorrhage, did you tear or cut the azygos vein with the mediastinoscopy when you'd never seen it? Answer: Because the mediastinoscope *was lifting it out* of the field of vision. Question: The mediastinoscope was *lifting it out?* Answer: Out of the field of vision." Appellant's enumeration is without merit.

8. Appellant next contends that the trial court erred in sustaining appellee's objection to a hypothetical question asked by appellant on cross-examination of Dr. Turk, a witness testifying for appellee. The question was challenged on the ground that it assumed that there was a "reduced circumference" of the walls of Mrs. Martin's arteries, a "fact" which appellee contended was not in evidence. The trial court sustained the objection to the question. Our review of the record shows that the evidence had established that Mrs. Martin had hypertension, characterized as more than "mild" hypertension. It was further established that "the commonest" cause of hypertension in Mrs. Martin's age group is a "loss of resiliency in the piping that carried the blood. The arteries become more rigid, *narrow.*" (Emphasis supplied.) Furthermore, evidence of record established that where there is a "long standing high level of hypertension . . . the walls of the vessels *thicken.*" (Emphasis supplied.)

"[R]eliance may be had upon circumstantial evidence for the proof of an essential fact in the framing of a hypothetical question . . ." *Wells v. Alderman,* 117 Ga. App. 724, 735 (11) (162 SE2d 18) (1968).

"Where reliance is made upon circumstantial evidence alone for proof of one of the essential facts assumed in the framing of a hypothetical question, the trier of fact may consider the answer to the question only if it has first determined that the assumed fact has been satisfactorily established." *Travelers Ins. Co. v. Hutchens,* 106 Ga. App. 631 (127 SE2d 712) (1962). It is only for the court to decide "whether a conclusion assumed *is at least supported* by the circumstantial evidence before allowing the matter to go to the jury for its determination as to whether the evidence actually established the fact. [Cit.]" (Emphasis supplied.) *Warmack v. Mini-Skools Ltd.,* 164 Ga. App. 737 (297 SE2d 365) (1982).

In the instant case, the assumption contained in appellant's question was premised upon the existence of circumstantial evidence that there was a "reduced circumference" of the walls of Mrs. Martin's arteries. Unlike the hypothetical question discussed in Division 6, wherein there was *no* probative evidence of the "fact" assumed in the question, the assumption that Mrs. Martin experienced a "reduced circumference" of her arteries was at least supported by the circumstantial evidence that she had hypertension, and that the most common cause of hypertension in Mrs. Martin's age group is a narrowing of the arteries. Whether the circumstantial evidence was sufficient to prove that Mrs. Martin's hypertension was caused by a "reduced circumference" of her arteries was a question for the jury. In this context, if the jury found that this fact had been proven by the circumstances, the jury would have been authorized to consider the answer to the hypothetical question. However, if the jury found that the fact had not been proven by the circumstances, the jury would have been required to disregard the answer to the question. See *Travelers Ins. Co. v. Hutchens,* supra at 633. In either case, the trial court erred in sustaining appellee's objection to the hypothetical question because the assumption therein was at least supported by the circumstantial evidence, and it therefore became a jury question as to whether the fact was proven.

9. Appellant next turns to the subject of charges given by the court, and enumerates as error the failure of the court to give its requested charge on the standard of care required of a physician. The charge, as given by the court, completely covered the subject of appellant's request, was far more complete and balanced, and was less likely to confuse the jury. "[T]he failure to give the pertinent requested [charge] in the exact language requested is not ground for reversal." *Palmer v. Wilkins,* 163 Ga. App. 104, 108 (294 SE2d 355) (1982).

10. The failure of the trial court to give the following requested charge is enumerated as error: "I charge you that the physician

surgeon must not only possess the requisite care and skill, but must exercise these qualifications. A physician surgeon is not an insurer or warranter that the exercise of his professional judgment will affect the cure of a patient. Nor is he obliged to bring to the exercise of his profession the utmost skill, if he measures up to the qualifications and applies a reasonable care and skill legally required of him, he is not responsible for a mistake of judgment. *If, however, an error of judgment is so gross as to be inconsistent with that degree of care and skill which a physician surgeon should possess and exercise, liability may result where injury is produced."* (Emphasis supplied.) When the charge was discussed, the court agreed to give all but the last sentence of the charge. However, appellant objected to that proposal and no component of the requested charge was given.

The standard of care owed by a physician in the care and treatment of his patient is that degree of care and skill and diligence ordinarily employed by the profession generally. *Fain v. Moore,* 161 Ga. App. 368 (228 SE2d 317) (1982). The law presumes that the physician has performed in a skillful manner, and the burden is on the plaintiff-patient alleging malpractice to show a lack of due care, skill, and diligence. "Expert testimony is [usually] required in order to overcome the presumption of care, skill, and diligence. [Cit.]" *Sandford v. Howard,* 161 Ga. App. 495, 496 (2) (288 SE2d 739) (1982). Only in extreme circumstances, where the error of judgment or result of treatment is so gross, and negligence is clear and palpable, may the plaintiff-patient overcome this presumption and meet his evidentiary burden without producing expert testimony to the effect that the defendant-physician violated the required degree of care and skill. *Shea v. Phillips,* 213 Ga. 269 (98 SE2d 552) (1957).

The final sentence of the requested charge apparently refers to the above stated principle of law concerning a physician's actions which are so gross as not to require the testimony of experts to establish that they were not in conformity with the required standard of care. See *Killingsworth v. Poon,* 167 Ga. App. 653 (307 SE2d 123) (1983); *Shea v. Phillips,* supra. The facts in the instant case do not demonstrate such a situation of obvious medical negligence, nor do they require such a charge. The instant case is not one of those extremely rare, "clear and palpable" malpractice cases and, therefore, to the extent that the requested charge was premised upon the law applicable in those cases, it was not adjusted to the evidence. Furthermore, to the extent that the last sentence of the charge might be interpreted as applicable to the correct standard of care at issue in the instant case, a review of the record shows that, as discussed in Division 9, the trial court fully charged the jury on that applicable standard of care and we find no error.

11. Appellant's eleventh enumeration of error asserts that the trial court erred in failing to give a requested charge on the consideration to be given to the circumstances surrounding the operation in determining whether reasonable care was exercised. After a review of the entire charge as given by the trial court, we find that, although the requested charge was not given word for word, the trial court did adequately cover the principles contained therein. Furthermore, the charge which was given by the trial court was a more complete and integrated charge than that which was requested. *Palmer v. Wilkins,* supra at 108.

12. Error is assigned upon the following charge given by the trial court: "I charge you that a mere difference in views between surgeons as to operating techniques, or as to medical judgment exercised, is insufficient to support an action for malpractice where it is shown that the procedure preferred by each, on the judgment exercised, is an acceptable and customary method of performing the surgery or treatment." The charge was supported by the facts of the case and is a correct principle of the law. *Hayes v. Brown,* supra, (2). There was no error.

13. Appellant next contends that the trial court erred in giving appellee's request to charge number 6. At trial, appellant objected to only the last sentence of that request to charge. The trial court sustained the objection raised, and the requested charge as so modified was then given. No other objection to the charge as given was made by appellant. Accordingly, there was no objection raised in the trial court which would preserve for appellate review the issue presented by this enumeration of error. OCGA § 5-5-24 (Code Ann. § 70-207); *Harris v. Miller Bros. Farms,* 161 Ga. App. 377, 379 (5) (288 SE2d 639) (1982).

14. Appellant's final enumeration of error alleges that the trial court erred in charging the jury on the applicable principles of Georgia law relating to a patient's consent to medical treatment. It is asserted that such a charge was not supported by the evidence. The charge as given by the trial court states a correct principle of law. See *Fox v. Cohen,* supra. After a review of the evidence, it appears that the charge was in fact supported by the evidence.

15. For the reasons discussed in Division 8 above, the judgment must be reversed and the case is remanded for a new trial.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED OCTOBER 13, 1983 —
REHEARING DENIED NOVEMBER 30, 1983 —

*L. B. Kent,* for appellant.
*Samuel E. Kelly, Jr., J. Ronald Mullins, Jr.,* for appellee.

On Motion for Rehearing.

On motion for rehearing appellee asserts that the exclusion by the trial court of an answer to the hypothetical question asked by appellant on cross-examination of Dr. Turk, appellee's expert witness, if error, was harmless. However, contrary to appellee's contentions, we find that the subject matter of the hypothetical question, namely the causation of the injuries sustained by Mrs. Martin, was a highly contested and vital issue at trial, and that "the exclusion of competent testimony in respect thereto is a substantial error, and not a mere technical one." *The Augusta & Summerville R. Co. v. Dorsey,* 68 Ga. 228, 229 (1881). Furthermore, we are not persuaded that the hypothetical question would have resulted in an answer which was merely cumulative of testimony given by other witnesses. The hypothetical question at issue was posed to the witness on cross-examination, and, therefore, no proffer was made. This court can not speculate as to what may have been the witness' answer to the question or its effect on the jury. *Barker v. Crum Trucking Co.,* 137 Ga. App. 435, 436 (2) (224 SE2d 53) (1976). It necessarily follows that it cannot be said that the witness' response to the specific question posed would have been cumulative of the testimony by other experts who testified only generally on the same subject matter. Compare *Warmack v. Mini-Skools Ltd.,* 164 Ga. App. 737 (1) (297 SE2d 365) (1982), wherein the answers sought to be elicited by the hypothetical questions actually reached the jury by other testimony of the *same* witness. Also compare *Firestone Tire &c. Co. v. Pinyan,* 155 Ga. App. 343, 351 (6) (270 SE2d 883) (1980), where "[t]estimony identical to that excluded, *as demonstrated by the proffer,* was given by at least one other witness and substantially the same evidence was given by at least two other witnesses. [Cit.]" (Emphasis supplied.)

We find that appellant's right to a thorough and sifting cross-examination was abridged. "A material abridgement or denial of the substantial right of cross-examination of opposing witnesses is material error and requires the grant of a new trial. [Cits.] 'As a general rule it is better that cross-examination should be too free than too much restricted.' [Cit.]" *Smith v. Davis,* 76 Ga. App. 154, 158 (45 SE2d 237) (1947). Therefore, refusal to allow an answer to the hypothetical question was harmful, as the error affected the substantial right of appellant to a thorough and sifting cross-

examination.

*Motion for rehearing denied.*