Mr. and Mrs. Jeffery DAVIS, Jointly and as Parents of Jeffery Lumonte Nelson, and Mrs. Patricia Nelson, as Temporary Administratrix of the Estate of Jeffery Lumonte Nelson, Plaintiffs–Appellants,

v.

COASTAL EMERGENCY SERVICES, INC., A Foreign Corporation, and Thomas J. Ryan, M.D., Defendants–Appellees.

No. 88–8213
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

March 29, 1989.

David E. Tuszynski, Nickerson and Tuszynski, Atlanta, Ga., for plaintiffs-appellants.

Theodore E.G. Pound, Alston & Bird, Atlanta, Ga., for defendants-appellees.

Before KRAVITCH, ANDERSON and CLARK, Circuit Judges.

PER CURIAM:

## FACTS

This medical malpractice action involves parents, Mr. and Mrs. Jeffery Davis (the Davises), suing a physician for failing to recognize that their son, Jeffery Lumonte Nelson (Jeffery), had appendicitis which later resulted in his death. Mr. and Mrs. Davis took Jeffery to the hospital emergency room on a Sunday morning because he had an enlarged stomach, had lost his appetite, had frequent urination and unusual thirst, and had vomited. Dr. Thomas J. Ryan examined Jeffery and concluded he had flu with pneumonia. Dr. Ryan sent the child home that morning with a prescription for some drugs with instructions to return in ten days. Later that afternoon, Jeffery's condition worsened. He could scarcely walk because of weakness. His parents drove him to the emergency room again, less than six hours after the initial visit. Jeffery's breathing stopped

and no pulse was detectable. The hospital staff began resuscitative efforts and Jeffery was placed on life support systems. That evening, Jeffery was operated on and his appendix was found to be gangrenous with two ruptures. On Tuesday, Jeffery died after his life support systems were withdrawn.

The Davises[1] brought a diversity action in the Southern District of Georgia against Dr. Ryan and Coastal Emergency Services, Inc. on March 4, 1987. At trial the jury returned a verdict in favor of the defendants and the district court entered a final judgment on March 10, 1988. The parents filed a timely notice of appeal.

## ISSUES & ANALYSIS

I. Whether the trial judge's jury instructions improperly characterized the defendant-doctor's character and denied the plaintiff a fair trial?

The appellants state that the following excerpt from the trial court's jury instructions improperly characterized the physician's character and prejudiced the parents' case, denying them a fair trial:

This is a case that is most unfortunate. It's very sad any time a human life is lost and it is regrettable in the extreme and even more so when it involves the death of a child, especially a three year old, but this is not a case about sympathy. Also it involves the practice of a physician who has appeared before you, *he has a pleasant appearances [sic] a very genuine and engaging nature,* but it is not a case about his future or his license or any effect that these events or your verdict may have on his professional reputation.

It is not necessary for the plaintiffs to show that the defendant has intended any harm or that the defendant was wreckless [sic] or wanton in any way. This is a negligence case a case wherein you are to determine, quite simply, whether or not the physician in the practice of his profession of diagnosing and

1. Mrs. Davis, formerly Patricia Nelson, is the temporary administratrix of Jeffery's estate.

treating illness kept his practice to the requisite level or degree of care and skill.

This case can't be decided on the basis of sympathy for a child or sympathy for the parents or sympathy for a doctor or his career, any more than you can decide the case on whether or not the appellants in this case have several more children or *whether or not the doctor has at other times made many many correct decisions.* It is your duty, as jurors, to consider this case on the evidence, to adhere to my instructions on the law and to return a true verdict.

Record, Vol. 2 at 325–26 (emphasis added).

The appellants suggest that the district court interfered with the jury's determination of the physician's credibility by asserting that "he has a pleasant appearances [sic] a very genuine and engaging nature." Appellants point out that the physician's credibility was crucial because his testimony conflicted with the mother's regarding the deceased child's condition at the hospital on Sunday morning. The appellees argue that the district court's statement was a *warning* (rather than a recommendation) that the jury should not be influenced by appearances.

Appellants also challenge the statement "whether or not the doctor has at other times made many many correct decisions." Appellants state there is no evidentiary basis for the asserted conclusion that the physician has made "many many correct decisions." The appellees state that the court was making a presumption that the physician had previously made correct decisions.

We do not find that the district court's charge was arbitrary, one-sided, or that it constituted a comment on ultimate factual issues, imposed the court's own opinion on the jury, or that the court assumed the role of witness or advocate, or added to the facts, as appellants suggest. The statement that the jury should not base its decision on *"whether or not the doctor has at other times made many many correct decisions"* does not add to the facts. It is simply a statement that even if the physi-

cian had previously made correct decisions he could still be liable for a mistake.

A fair reading of the entire jury charge indicates that the district court charged the jury in a balanced and unbiased manner. Because this court must consider the record as a whole and not just isolated remarks, *Dixon v. Intl. Harvester Co.*, 754 F.2d 573, 585 (5th Cir.1985), the entirety of the district court's statements is impartial and did not deny the appellants a fair trial.

II. Whether the trial court's jury instructions were erroneous on the proper standard for negligence in medical malpractice cases?

■ By statute, Georgia recognizes a medical malpractice cause of action:

A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had.

Ga.Code § 51–1–27 (1982). The presumption is that medical and surgical services are performed in an ordinarily skillful manner with the burden on the plaintiff to show want of due care, skill and diligence. *Grindstaff v. Coleman*, 681 F.2d 740, 741 (11th Cir.1982).

The district court gave as part of the jury instructions the following statement:

[D]ifferences in views is [sic] not sufficient to show malpractice when it is shown that the procedure or judgment preferred by each doctor is an acceptable and customary medical approach. In other words there may be more than one acceptable customary medical approach.

Record, Vol. 2, at 319. The appellants state that this instruction is erroneous because, under Georgia law, custom is not an excuse for negligence. The appellees argue that the standard of negligence in medical malpractice is different from the ordinary negligence case because in medical malpractice actions the custom and practices of physicians define the standard.

Both parties acknowledge the case of *Hyles v. Cockrill*, 169 Ga.App. 132, 312 S.E.2d 124 (Ga.App.1983), in which the Georgia Court of Appeals held the following charge is the correct principle of law:

> I charge you that a mere difference in views between surgeons as to operating techniques, or as to medical judgment exercised, is insufficient to support an action for malpractice where it is shown that the procedure preferred by each, on the judgment exercised, is an acceptable and *customary* method of performing the surgery or treatment.

169 Ga.App. at 139, 312 S.E.2d at 131 (emphasis added). The appellants argue that this charge impermissibly allows a "custom" defense in medical malpractice actions.

Appellants are correct when they argue that custom is normally not a defense in an action for negligence. *See, e.g., Smith v. Godfrey*, 155 Ga.App. 113, 113–14, 270 S.E.2d 322, 324 (1980). For example, an operator of dangerous machinery cannot assert that he has customarily operated the equipment in a described manner and thus it was a safe manner in which to operate it. The custom itself must also be an exercise of ordinary care. *Id.* Nor can a doctor assert that just because he has customarily performed a diagnosis or treatment in a given manner, he has not been guilty of malpractice. *Cronic v. Pyburn*, 170 Ga.App. 377, 317 S.E.2d 246, 248 (1984) (medical malpractice governed by general rather than local community standard). In both instances the defendant may have been negligent in the past.

That is not the issue here. The district court's charge accurately defined the proper standard of care courts must apply in medical malpractice cases in terms almost identical to those the Georgia Court of Appeals used in *Hyles*. Record, Vol. 2 at 316–22. In using the word "customary," the Georgia law is defining the standard of medical practice as that which is customarily used by doctors so long as that practice is acceptable by the medical profession.

*Cronic*, 170 Ga.App. at 378, 317 S.E.2d at 247 ("standard of care is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally"). Because the district court used the phrase "acceptable customary medical approach," the jury charge does not create a custom defense in malpractice actions. The district court's instructions, as a whole, were proper.[2]

AFFIRMED.

---

**2.** All of the district court's other instructions are based on the Georgia medical malpractice stat- ute and pertinent case law and are not at issue here.