**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 29, 2014**

# In the Court of Appeals of Georgia

A14A1409. YOUNG v. GRIFFIN.

MCFADDEN, Judge.

After a motorcycle ridden by Eugene Young collided with a truck driven by James Lamonte Griffin, Young sued Griffin for personal injury. A jury found Young to be 51 percent negligent and Griffin 49 percent negligent in connection with the collision, and the trial court entered a judgment in Griffin's favor. On appeal, Young argues that the trial court inadequately responded to improper closing arguments of Griffin's counsel, but even assuming the arguments were improper they did not in reasonable probability change the result of the trial. Young also argues that the trial court gave three jury charges that were not supported by the evidence, but the evidence authorized two of the charges and the third was not reversible error. Accordingly, we affirm.

1. *Trial evidence.*

Young testified at trial that, on June 19, 2010, he was riding his motorcycle southbound toward a railroad crossing, traveling at 25 miles per hour. As he "got right at the track" the crossing lights flashed and he heard a train. He then saw Griffin's truck blocking his lane on the other side of the crossing. He slammed on his brakes but was unable to stop and hit the truck. He was injured in the collision. In his cross-examination of Young, Griffin's counsel introduced into evidence photographs showing the skid marks left by the motorcycle.

Griffin testified that he was driving northbound toward the railroad crossing when the crossing lights began to flash and the crossing arm began to descend. There was no oncoming traffic between him and the crossing at that time, and he did not expect any vehicles to cross the tracks as the arm was descending. Griffin decided to make a U-turn to avoid waiting on the train. The turn took him "a few seconds." As he had almost completed the turn with his truck blocking the southbound lane, he heard and felt the impact of Young's motorcycle. He had not seen or heard Young before that point. The force of the impact damaged the frame of Griffin's truck.

The driver of a vehicle that was behind Griffin's truck at the time of the collision testified that the crossing lights began flashing and the crossing arm began

2

descending before Griffin started the U-turn. The driver did not see any oncoming traffic when Griffin started the turn, and he did not see or hear Young before the collision occurred. The passenger in that vehicle also testified that the crossing arm began descending before Griffin started his U-turn, and that at that point she had not seen any oncoming traffic. She did not see where Young was when the gate began descending. She heard the impact of the collision, which occurred as Griffin was completing the U-turn.

The police officer who responded to and investigated the accident testified that the speed limit on that segment of road was 35 miles per hour. He testified that both Griffin and the driver of the vehicle behind Griffin's truck told him at the scene that Young had crossed the railroad tracks as the arm was descending. He determined that Griffin and Young both were at fault for the collision. (The trial court allowed the officer to give this opinion over Young's objection; Young has not challenged that ruling on appeal.)

2. *Improper closing arguments.*

Young asserts that Griffin's counsel made improper arguments during closing and that the trial court should have either rebuked counsel and given a curative jury instruction or granted Young a mistrial. But Young did not object contemporaneously

3

to one of the allegedly improper arguments, and he did not obtain from the trial court a ruling either sustaining or overruling his objection to the other of the allegedly improper arguments. Consequently, our appellate review of this issue is limited to "whether the improper argument[s] in reasonable probability changed the result of the trial." *Stolte v. Fagan*, 291 Ga. 477, 483 (2) (b) (731 SE2d 653) (2012) (citation omitted). Applying this standard, we find that Young has not shown reversible error.

Griffin's counsel argued in closing that the skid mark evidence contradicted Young's testimony that he did not see the flashing lights until he had reached the railroad tracks. Griffin's counsel stated:

> There is something called perception time and reaction time. I talked about it yesterday and, in fact, I believe, if I'm not mistaken, [Young's counsel] talked about it in his opening statement. I think he even used the figure of two or two and a half seconds for perception time and reaction time and that's probably about right, the time it takes the human body to perceive a problem and then react to it.

> And the reason that is significant, Ladies and Gentlemen, is if the skid marks start on the northern boundary of the railroad tracks and Mr. Young is going south, that means he perceived an issue at the railroad tracks back up the road when he was north of the railroad tracks. The skid marks start here ([i]ndicating). That means he perceived something when he was up here ([i]ndicating).

4

Griffin's counsel then calculated the number of feet a person driving 25 miles per hour would travel in a second and argued: "If we go with what [Young's counsel] said yesterday, two and a half seconds for perception and reaction . . . ."

At that point, Young's counsel objected, stating that Griffin's counsel was "misstating both what I said and the evidence. I never said there was a reaction time of two and a half seconds. What we said was it took [Griffin] two seconds to make his U-turn." In the jury's presence, both sides debated exactly what Young's counsel had said during his opening statement. The trial court then said: "Since this has been brought up, I will have to leave it to the jury to remember what was said during the course of the trial. Go ahead, [Griffin's counsel]."

Griffin's counsel proceeded to argue that, considering a "perception and reaction time" of two and a half seconds and a speed of 25 miles per hour, the skid mark evidence indicated that Young "would have been 90 feet north of the railroad tracks at the time he saw something that caused him to put on his brakes." Young's counsel made no further objection during closing argument, but once the jury retired he moved for a mistrial based on the allegedly improper arguments. The trial court reviewed the transcript of Young's opening statement and denied the motion.

5

Young argues that the trial court's response was insufficient. See OCGA § 9-10-185 (imposing duty on trial court to interpose and prevent counsel from making statements of prejudicial matters not in evidence, to rebuke counsel and give curative instruction to endeavor to remove improper impression from jury's minds if counsel objects to improper statements, and in its discretion to order mistrial if plaintiff's attorney is offender). But unlike in *Stolte*, 291 Ga. at 479-482 (2), and *Steele v. Atlanta Maternal-Fetal Medicine*, 271 Ga. App. 622, 622-625 (1) (610 SE2d 546) (2005), overruled in part on other grounds by *Smith v. Finch*, 285 Ga. 709, 712 (1) (681 SE2d 147) (2009), which Young cites in support of this argument, here the trial court neither overruled nor sustained Young's objection. "It is the duty of counsel to obtain a ruling on his motions or objections." *Smith v. Stacey*, 281 Ga. 601, 602 (1) (642 SE2d 28) (2007) (citation and punctuation omitted). Moreover, "the fact that [Young] made a prior objection [did] not obviate [his] responsibility to interpose a contemporaneous objection at each instance of offending argument." *Stolte*, 291 Ga. at 482 (2) (b) (citation and footnote omitted). An objection to a closing argument made after the argument has concluded is untimely. See id.; see also *Mullins v. Thompson*, 274 Ga. 366, 367 (2) (553 SE2d 154) (2001) (motion for mistrial based

6

on improper closing argument cannot be made after closing argument); *Hamilton v. Shumpert*, 299 Ga. App. 137, 144 (3) (682 SE2d 159) (2009) (accord).

Under these circumstances, we must assess the allegedly improper closing arguments to determine "whether the improper argument[s] in reasonable probability changed the result of the trial." *Stolte*, 291 Ga. at 483 (2) (b) (citations and punctuation omitted). Assuming that the arguments referring to "perception and reaction time" were improper (given that no trial evidence addressed that concept), we cannot say that in reasonable probability these arguments changed the trial result. Other trial evidence cast doubt on Young's depiction of events, including: the physical skid mark evidence; the testimony from Griffin and the other eyewitnesses that the crossing arm had begun descending before Griffin started his U-turn, that they saw no oncoming traffic at that time, and that Young struck Griffin as Griffin had nearly completed his turn; and the testimony of the investigating police officer regarding the information he obtained at the scene. Moreover, the trial court specifically instructed the jury that "what the lawyers say during this trial is not evidence," including what "they say in their opening statements or their arguments[.]" Cf. *O'Neal v. State*, 288 Ga. 219, 223 (2) (702 SE2d 288) (2010) (finding it highly probable that trial court's inadequate response to improper closing argument did not

7

contribute to jury's verdict in light of strength of state's evidence and trial court's specific instruction to jury that closing arguments of counsel did not constitute evidence).

Accordingly, we find no reversible error arising from the trial court's response to the allegedly improper arguments.

3. *Jury charges.*

Over Young's objection, the trial court charged the jury on certain provisions of OCGA § 40-6-140 (concerning a driver's responsibility to stop at a railroad crossing), OCGA § 40-6-180 (concerning a driver's speed when approaching a railroad crossing, among other things), and OCGA § 40-6-182 (concerning the setting of speed limits). The trial court instructed the jury that Griffin contended Young had violated each of these Code sections, that the jury was to determine whether such a violation occurred, and that any such violation constituted negligence as a matter of law. Young argues that the evidence did not support these charges. See *Dept. of Transp. v. Davison Investment Co.*, 267 Ga. 568, 570 (2) (481 SE2d 522) (1997) ("Instructions not warranted by the evidence are cause for a new trial unless it is apparent that the jury could not have been misled thereby.") (citations and punctuation omitted). The charges on OCGA §§ 40-6-140 and 40-6-180 were correct,

8

and the charge on OCGA § 40-6-182 was harmless. We therefore find no ground for reversal.

In the charge, the trial court recited verbatim the following portions of OCGA § 40-6-140:

(a) Whenever any person driving a vehicle approaches a railroad grade crossing, such driver shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad and shall not proceed until he can do so safely, when: (1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train; (2) A crossing gate is lowered or a human flagman gives or continues to give a signal of the approach of the passage of a train; or (3) An approaching train is plainly visible and is in hazardous proximity to such crossing. (b) No person shall drive any vehicle through, around, or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed. . . . (d) No person shall drive a vehicle over a railroad grade crossing when a train is approaching.

OCGA § 40-6-140 (a), (b), (d). The trial court also recited verbatim the entirety of OCGA § 40-6-180, which provides:

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. Consistently with the foregoing, every person shall drive at a reasonable and prudent speed when approaching and crossing an intersection or railroad grade crossing, when

9

approaching and going around a curve, when approaching and traversing a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

OCGA § 40-6-180.

The trial court did not err in giving charges on either of these Code sections. The trial evidence supported the giving of a charge on OCGA § 40-6-140, because there was circumstantial evidence that Young crossed the railroad tracks after the crossing gate began to descend. Several witnesses testified that the crossing gate began to descend *before* Griffin started his turn, and Young testified that he was on the railroad tracks when he saw Griffin's truck blocking his lane. Moreover, the investigating police officer testified that witnesses at the scene told him that Young had crossed the tracks as the gate was descending. The trial evidence also supported the giving of a charge on OCGA § 40-6-180, because it showed that one of the conditions addressed by that Code section – the approaching and crossing of a railroad grade crossing – was at issue in this case.

Finally, the trial court recited verbatim the entirety of OCGA § 40-6-182, which provides:

10

Whenever the commissioner of public safety or the commissioner of transportation shall determine upon the basis of an engineering and traffic investigation that any maximum speed set forth in this article is greater or less than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of the state highway system, they may jointly determine and declare a reasonable and safe maximum speed at such place, which shall be effective when appropriate signs giving notice thereof are erected. Such a maximum speed limit may be declared to be effective at all times as are indicated upon such signs; and differing limits may be established for different times of day, different varying weather conditions, and other factors bearing on safe speeds, which shall be effective when posted upon appropriate fixed or variable signs. In no case shall the maximum speed limit for any highway be established at higher than the maximum speed limits set forth in Code Section 40-6-181 for that type of highway.

OCGA § 40-6-182. Although this charge accurately recited the provisions of OCGA § 40-6-182, it was not appropriate for the trial court to charge the jury with determining whether Young violated this Code section. As Young points out in his appellate brief, OCGA § 40-6-182 does not govern his behavior; it governs the actions of the commissioners of public safety and transportation in setting speed limits. "Nevertheless, we discern no reversible error here because an inapplicable jury instruction is not grounds for reversal where it does not appear that the inapplicable

part was calculated to mislead the jury, erroneously affected the verdict or was prejudicial to the rights of the complaining party." *Williams v. Capitol Corporate Cleaning*, 313 Ga. App. 61, 64 (1) (e) (720 SE2d 228) (2011) (citation and punctuation omitted). The evidence regarding the posted speed limit in this case was undisputed, and no suggestion was made that the posted speed limit had been improperly set. Consequently, the charge on the statute governing the setting of speed limits "did not demand a finding against [Young]. It was a matter for the jury to weigh the evidence, evaluate causation, and allocate liability. Based on the record in this case, the challenged jury instruction did not affect that process such that a reversal is required." Id. (footnote omitted).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur*.