311 Ga. 439
FINAL COPY

S20G1121.  WILLIAMS v. HARVEY et al.

MCMILLIAN, Justice.

Rubin Harvey, while driving a dump truck in the course of his employment with Oxford Construction Company, collided with a tractor driven by Johnny Williams, causing severe injuries to Williams. After Oxford conceded liability in the ensuing lawsuit, the jury returned a general verdict for $18 million. The defendants appealed, and the Court of Appeals reversed, holding that, although the defendants did not make a contemporaneous objection, Williams's counsel made an improper and prejudicial statement in closing argument that clearly violated the trial court's order granting the defendants' motion in limine. See *Harvey v. Williams*, 354 Ga. App. 766, 770 (1) (a) (841 SE2d 386) (2020). We granted Williams's petition for certiorari and posed a single question:

> Whether a party must object to argument of counsel that allegedly violates a granted motion in limine in order to

preserve the issue for appeal?

For the reasons set forth below, we answer in the affirmative and reverse the judgment of the Court of Appeals.[1]

The Court of Appeals summarized the underlying facts as follows:

> On April 11, 2013, Williams was driving a tractor for a local pecan farmer when a loaded dump truck driven by Harvey, an employee of Oxford, hit the back of his tractor. Williams was thrown from the tractor and ended up in a ditch on the side of the highway. As a result of the collision, Williams sustained severe injuries, including but not limited to a traumatic brain injury, multiple fractures (including a cracked skull), and the onset of seizures. In addition, while in the hospital for treatment, he developed sepsis. After spending approximately six weeks in the hospital, Williams was transferred to a rehabilitation center for patients with traumatic brain and other injuries where he was evaluated by several specialists and participated in different types of therapy. Williams was discharged to his home after approximately five weeks with the instruction that he would require 24-hour supervision.
>
> At the time of the collision, Williams was 67 years old and was physically active. He enjoyed doing yard work, going to church and singing in the choir, and being around his family and friends. As a result of the traumatic brain injury he sustained in the accident, Williams requires 24-hour care for his day-to-day activities,

---

[1] We are assisted in answering this question by the amicus brief filed by Butler Wooten & Peak LLP.

requires medication to prevent seizures, has dementia, has trouble walking, has trouble emotionally because he gets agitated and confused, and has sexual dysfunction. When he walks, his gait is very slow and unsteady, and he has to wear a gait belt because he is at high risk for falling. At the time of trial, Williams was living at home and receiving care from certified nursing assistants 24 hours a day.

A life care plan was prepared for Williams, and it included two options — the first option was for him to stay in the home environment and the second option was for him to move to a residential memory care unit. Because the home care option was only available so long as a family member lived with Williams in the home, the life care planner added the memory care unit option in the event a family member was unable to live with him for a temporary or extended period of time. An economics expert calculated the present value of the life care plan, assuming that Williams would live 11.57 years, and valued the home care option at $2,146,805 and the memory care unit option at $773,212. The economist also calculated lost earnings and modest fringe benefits to age 72½ in the amount of $85,524. Williams's medical expenses totaled $1,150,054.15. Thus, with the home care option, the total special damages would be $3,382,383.15, and with the memory care unit option, the total would be $2,008,790.15.

During opening [statements], Williams's counsel informed the jury that they would be seeking approximately $3.4 million in special damages and $20 million for pain and suffering. Counsel for Oxford and Harvey informed the jury during opening [statements] that they were admitting that Harvey was negligent and that he had caused the accident, and that the only issue to be resolved was the amount of compensation Williams

should receive. Defense counsel suggested that fair and reasonable compensation would be between $4.1 million and $5.1 million, which would include payment of the claimed medical expenses and lost wages and future care in the amount of $1.5 million, representing the approximate average between the cost of in-home care and the cost of the memory care unit, as well as pain and suffering of $1.5 million to $2.5 million. During closing argument, counsel for both parties repeated their suggestions as to the appropriate award for Williams. The jury returned a verdict for $18 million. Following the verdict, the trial court credited Oxford and Harvey with an insurance company payment in the amount of $5,432,103.84 and entered judgment in favor of Williams in the amount of $12,567,896.16. The trial court also awarded prejudgment interest in the amount of $1,865,753.42 because Oxford and Harvey failed to accept Williams's pretrial demand of $6 million, which was made in accordance with OCGA § 51-12-14 (a).

Oxford and Harvey filed a motion for new trial in which they argued, inter alia, that Williams's counsel violated several of the court's motion in limine rulings during closing argument, including the ruling prohibiting arguments offered predominantly to overly inflame the emotions of the jury and the ruling prohibiting a violation of the "golden rule." Oxford and Harvey also argued that Williams was not entitled to prejudgment interest pursuant to OCGA § 51-12-14. Following a hearing, the trial court denied the motion for new trial. In its order, the trial court specifically addressed the potential "golden rule" violation and the prejudgment interest issue but only mentioned in general terms the claimed violation of the ruling prohibiting arguments offered predominantly to overly inflame the emotions of the jury [before holding there was no violation].

4

*Harvey*, 354 Ga. App. at 766-68.

In the relevant motion — motion in limine number 33 — the defendants sought to exclude "[s]tatements, contentions, arguments, inferences, or proffer of any evidence to elicit sympathy for the Plaintiff or any individual." The trial court reserved ruling on the motion as to potential testimony or evidence, finding the motion overly broad and too vague, but also stated: "Nevertheless, any statements, arguments, or evidence offered predominantly to overly inflame the emotions of the jury or to [e]licit excessive or undue sympathy, hostility, or prejudice for or against either party is prohibited." In reversing the judgment, the Court of Appeals held that Williams's closing argument, in which counsel compared the life care plan with the nursing home option to a "death warrant," "clearly violated the trial court's ruling precluding argument offered predominantly to overly inflame the emotions of the jury." *Harvey*, 354 Ga. App. at 769 (1) (a). And, although there was no contemporaneous objection, the Court of Appeals, relying on *Central*

5

*of Ga. R. Co. v. Swindle*, 260 Ga. 685, 687 (398 SE2d 365) (1990), held that the trial court's ruling on the motion in limine was sufficient to preserve the issue for appeal, and that the error was harmful. See *Harvey*, 354 Ga. App. at 769-70 (1) (a). We granted certiorari to consider this part of the Court of Appeals's opinion.

1. We begin our analysis by examining the evolution of Georgia's contemporaneous objection rule in the context of a purported violation of a motion in limine during trial. The contemporaneous objection rule, which has been a cornerstone of Georgia trial practice for over 150 years,[2] generally requires that, "in order to preserve a point of error for the consideration of an appellate court, counsel must take exception to the alleged error at the earliest possible opportunity in the progress of the case by a proper objection made a part of the record." *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 267 (1) (476 SE2d 722) (1996) (citation and punctuation omitted). This requirement affords the trial court the

---

[2] See, e.g., *Goodtitle v. Roe*, 20 Ga. 135, 140 (1856); *Burtine v. State*, 18 Ga. 534, 537 (1855).

6

opportunity to take remedial action if necessary at the time the alleged error is made, thereby reducing the likelihood that a motion for new trial or appeal will result in reversal of the final judgment. See *Weldon v. State*, 297 Ga. 537, 541 (775 SE2d 522) (2015) ("Failure to raise the issue deprives the trial court of the opportunity to take appropriate remedial action and waives appellate review of any alleged impropriety."); *Miller v. State*, 267 Ga. 92, 92 (2) (475 SE2d 610) (1996) (addressing the defendant's failure to object to alleged improper closing argument at the time it occurred in order to afford the trial court the opportunity to take remedial action).

A motion in limine is a pretrial motion that may be used in two ways: (1) to obtain a final ruling on the admissibility of evidence prior to trial or (2) to prevent the mention of certain evidence or an area of inquiry until its admissibility can be determined during the course of trial outside the presence of the jury. See *State v. Johnston*, 249 Ga. 413, 415 (3) (291 SE2d 543) (1982). See also *Tollette v. State*, 280 Ga. 100, 103 (8) (621 SE2d 742) (2005) (noting that, in addition to evidence, a motion in limine may seek to limit a specific argument

7

at trial). "The trial court has an absolute right to refuse to decide the admissibility of evidence, allegedly violative of some ordinary rule of evidence, prior to trial." *Johnston*, 249 Ga. at 415 (3). Where, however, the trial court does rule on the admissibility of evidence or argument prior to trial, this determination controls the subsequent course of action. See id.

In *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284 (260 SE2d 20) (1979), this Court held for the first time that when a motion in limine to exclude certain evidence was denied, the moving party need not renew its objection when the same disputed evidence is offered at trial in order to preserve its right to appeal the denial of the motion. See id. at 286 (1). Looking to Federal Rule of Evidence 103 as it then existed, the Court reasoned that where the trial court has been apprised of the possible error in admitting evidence and has made its ruling, the record has been perfected for the purpose of appeal and there is no reason for another objection that may further highlight the inflammatory evidence and unduly burden the trial court. See id. Three years later, we concluded that the same

reasoning also applies when a motion in limine to exclude evidence was *granted*. See *Reno v. Reno*, 249 Ga. 855, 856 (1) (295 SE2d 94) (1982). The Court explained that to require a successful movant to object when evidence encompassed by a motion in limine is nevertheless offered at trial "would defeat the purpose of the motion" because the movant would be forced "to call special attention to prejudicial evidence" in the jury's presence. Id. at 856 (1).

Eventually, and without explanation or analysis, the Court of Appeals began applying the rules announced in *Daniel* and *Reno* to motions in limine related to argument as well as evidence. See, e.g., *Hernandez v. State*, 291 Ga. App. 562, 565 (1) n.3 (662 SE2d 325) (2008) (although the defendant did not object to the prosecutor's use of the term "illegal immigrant" in closing argument in violation of a motion in limine, alleged error was preserved for appellate review); *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 878 (1) (447 SE2d 302) (1994) (although the plaintiffs presented no evidence of similar incidents, counsel's repeated references to other lawsuits and deaths during opening statement, questioning of witnesses, and closing

9

argument violated motion in limine ruling and defendant was not required to object at trial to preserve the matter for appellate review). But see *Ralston v. State*, 170 Ga. App. 389, 390 (317 SE2d 221) (1984) (questioning whether *Reno*'s holding applies to alleged improper argument by counsel). This Court has never applied *Reno*'s holding to argument by counsel that allegedly violated a motion in limine.[3]

(a) *OCGA § 24-1-103 and Federal Rule of Evidence 103.*

In 2000, Rule 103 of the Federal Rules of Evidence was amended to clarify that, once a trial court has definitively ruled on the record, a party need not renew an objection to preserve a claim of error for appeal. See Fed. R. Evid. 103 (b) ("Once the court rules

---

[3] The Court of Appeals cited *Swindle* to support its conclusion that no contemporaneous objection was required to preserve the alleged violation of the motion in limine for appellate review. See *Harvey*, 354 Ga. App. at 769 (1) (a). However, nowhere in the majority opinion in *Swindle* did this Court rely upon a violation of a motion in limine during argument to support reversal. Instead, the Court pointed to plaintiff's attempt to establish improper motive throughout the trial, which culminated in the "pejorative nature of plaintiff's closing argument." *Swindle*, 260 Ga. at 687 & n.1 ("Notwithstanding the ruling of the trial court on the motion in limine," a "'detailed appraisal of the evidence bearing on damages'" demanded the conclusion that the plaintiff's attempt to establish improper motive "permeated the trial . . . .").

10

definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). This amendment applies to all evidentiary rulings, including rulings on motions in limine. See, e.g., *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F3d 1171, 1178 (II) (A) (11th Cir. 2013). Significantly, however, the Advisory Committee's Note on the 2000 amendments to Rule 103 explains:

> Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered. If the court changes its initial ruling, or *if the opposing party violates the terms of the initial ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal.* The error, if any, in such a situation occurs only when the evidence is offered and admitted.

(Emphasis supplied.)  See also *ML Healthcare Svcs., LLC v. Publix Super Markets, Inc.*, 881 F3d 1293, 1305 (II) (E) (11th Cir. 2018) (relying on this Advisory Committee's Note); 21 Charles A. Wright & Kenneth W. Graham, Federal Practice & Procedure § 5037.16 (2d ed. 2005) ("Since the error is not in granting or denying the motion in limine, but in admitting or excluding the evidence at trial, the

11

motion in limine does not preserve this error." (citing several federal appellate decisions)).

In 2011, the General Assembly enacted Georgia's current Evidence Code, which is largely patterned after the Federal Rules of Evidence; the current Code took effect on January 1, 2013. See Ga. L. 2011, p. 99, § 1. Since then, we have held that, based on the preamble to the act adopting the new Evidence Code, if a rule in the new Evidence Code "is materially identical to a Federal Rule of Evidence, we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit, for guidance." *Harris v. State*, 321 Ga. 372, 378 (2) (b) n.14 (850 SE2d 77) (2020) (citation and punctuation omitted). See also *Beck v. State*, 310 Ga. 491, 498 (3) n.3 (852 SE2d 535) (2020) (explaining that a judicially created evidentiary rule was abrogated by the adoption of the new Evidence Code). We have also concluded previously that the "Advisory Committee Notes to the Federal Rules of Evidence are highly persuasive in interpreting provisions of Georgia's current

Evidence Code . . . that are materially identical to provisions of the Federal Rules of Evidence that were in effect when the current Evidence Code was adopted." *Smith v. State*, 311 Ga. 288, 291 n.4 (857 SE2d 698) (2021) (citing *State v. Almanza*, 304 Ga. 553, 556, 559 (3) n.6 (820 SE2d 1) (2018)).

Applying these principles, because OCGA § 24-1-103 (a) (2)[4] is specifically patterned after Federal Rule of Evidence 103 (b), and the Eleventh Circuit interprets that provision, based on the Advisory Committee Notes, as requiring a contemporaneous objection when a ruled-upon motion in limine regarding the admissibility of evidence is allegedly violated at trial, it is clear that the adoption of OCGA § 24-1-103 (a) (2) abrogated the contrary holding announced in *Reno* that no contemporaneous objection is required to preserve the alleged error when a party violates such a ruled-upon motion in

---

[4] This statute provides, in pertinent part, that "[o]nce the court makes a definitive ruling on the record admitting or excluding any evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve such claim of error for appeal."

limine.[5]

Although OCGA § 24-1-103 (a) (2) applies only to evidence,[6] we see no reason why this rationale should not equally apply to statements made by counsel during opening statements and closing argument. As an initial matter, closing argument must be based on the evidence presented at trial. See OCGA § 9-10-185 (In civil cases, "[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same."); OCGA § 17-8-75 (same in criminal cases). And requiring a contemporaneous objection to an alleged violation of a motion in limine during closing argument

---

[5] To the extent subsequent cases followed *Reno* for this proposition with respect to evidentiary errors, they have likewise been abrogated, including *CSX Transp., Inc. v. Smith*, 289 Ga. 903, 907 (2) (717 SE2d 209) (2011); *Lewis v. State*, 279 Ga. 69, 73 (5) n.17 (608 SE2d 602) (2005); *Rouse v. State*, 290 Ga. App. 740, 742 (1) (660 SE2d 476) (2008); *Pruette v. Ungarino*, 326 Ga. App. 584, 587 (2) (757 SE2d 199) (2014); *Herring v. State*, 288 Ga. App. 169, 173 (2) (a) (653 SE2d 494) (2007); *Scott v. Chapman*, 203 Ga. App. 58, 59 (1) (416 SE2d 111) (1992); and *Seay v. Urban Med. Hosp., Inc.*, 172 Ga. App. 344, 346 (3) (323 SE2d 190) (1984).

[6] See *Gates v. State*, 298 Ga. 324, 328 (4) (781 SE2d 772) (2016) ("Georgia's new Evidence Code, specifically OCGA § 24-1-103, deals with rulings which admit or exclude evidence, and it is well settled that closing arguments do not amount to evidence." (citation and punctuation omitted)).

would further the purpose of the contemporaneous objection rule —

to afford an opportunity for the trial court to remediate error at the

time it is made. See *Weldon*, 297 Ga. at 541.

We also note that the United States Court of Appeals for the

Eleventh Circuit and other federal appellate courts, even without

relying on Federal Rule of Evidence 103, likewise require a

contemporaneous objection to argument that allegedly violates a

motion in limine ruling. See, e.g., *Cephus v. CSX Transp., Inc.*, 771

Fed. Appx. 883, 895 (II) (B) (iii) (11th Cir. 2019) (although plaintiff's

closing argument arguably violated the district court's order on a

motion in limine, defendant did not make a contemporaneous

objection during closing argument and thus failed to give the district

court an opportunity to sustain the objection and provide a curative

instruction); *Thorncreek Apartments III, LLC v. Mick*, 886 F3d 626,

635 (II) (B) (1) (7th Cir. 2018) (although a definitive ruling in limine

ordinarily preserves an issue for appellate review without the need

for further objection, opposing party was required to make a

contemporaneous objection to an alleged violation of the motion in

15

limine during closing argument); *Settlegoode v. Portland Public Schools*, 371 F3d 503, 517 (9th Cir. 2004) (failure to make a contemporaneous objection to an alleged violation of a motion in limine during closing argument precludes ordinary appellate review). And as other state courts have persuasively observed, "[t]o hold otherwise would adopt a rule that violates principles of judicial economy by permitting counsel to sit silently when an error is committed at trial with the hope that they will get a new trial because of that error if they lose." *BMW of North America v. Roth*, 252 P3d 649, 661 (III) (B) (3) (Nev. 2011) (cleaned up) (granted motion in limine does not serve as an objection for purposes of preserving a future appeal for subsequent alleged violations of the order, including attorney misconduct in opening statement).[7]

---

[7] See also *Givens v. Anderson Columbia Co., Inc.*, 608 SW3d 65, 79 (D) (Tex. App. 2020) (violation of a limine order does not preserve error for appellate review absent further objection); *Miller v. Allman*, 813 SE2d 91, 107 (III) (D) (W. Va. 2018) (pretermitting whether counsel's closing argument violated motion in limine ruling, opposing party did not preserve the issue for appellate review by timely objecting to the argument at trial); *People v. Dinapoli*, 369 P3d 680, 684 (III) (B) (Colo. App. 2015) ("We perceive no reason why the same preservation rules should not also apply to issues of prosecutorial comment or argument that have been raised and ruled on before

We conclude that a contemporaneous objection must be made at the time an alleged violation of a ruled-upon motion in limine occurs at trial — whether during the presentation of evidence or in opening statements or arguments made by counsel before the factfinder — in order to preserve the error for appeal.[8] Although the defendants argue that this contemporaneous objection requirement will serve only to further highlight prejudicial evidence or argument in the presence of the jury, we disagree. When a ruled-upon motion in limine is allegedly violated at trial, the opposing party objects and the trial court agrees that the motion in limine has been violated, the court is in a position to take remedial action, including providing curative instructions to the jury and admonishing counsel for the violation if necessary. See, e.g., *Lynn v. State*, 310 Ga. 608, 612 (3) (852 SE2d 843) (2020) ("[T]he trial court's prompt curative

trial."); *Alfa Mut. Ins. Co. v. Moreland*, 589 S2d 169, 171 (Ala. 1991) (even when counsel's improper closing argument violated motion in limine ruling, generally no sufficient ground exists for a new trial without a timely objection and a ruling by the trial court or a refusal by the trial court to make a ruling).

[8] For this reason, we overrule those Court of Appeals cases that have held otherwise, including *Hernandez*, 291 Ga. App. at 565 (1) n.3; *Moseley*, 213 Ga. App. at 878 (1); and *Bentley v. BMW, Inc.*, 209 Ga. App. 526, 527 (1) (433 SE2d 719) (1993).

instruction negated any prejudice by telling the jury to disregard the reference, an instruction that we presume the jury followed."). This approach is preferable and far more efficient than the alternative, in which the aggrieved party can sit back and make no objection in the hope of either a successful verdict or, in the event of a loss, persuading the trial court or the appellate court to reverse much later in a motion for new trial or on appeal.

(b) *OCGA § 9-10-185 and Stolte v. Fagan.*

The defendants argue that, notwithstanding the adoption of Rule 103, under OCGA § 9-10-185 and *Stolte v. Fagan*, 291 Ga. 477 (731 SE2d 653) (2012), the ruled-upon motion in limine should have been considered an "objection made" such that no contemporaneous objection was required at the time of Williams's improper closing argument. We disagree.

OCGA § 9-10-185 provides:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. *On objection made*, the court shall also rebuke counsel and by all needful and proper instructions

> to the jury endeavor to remove the improper impression from their minds. In its discretion, the court may order a mistrial if the plaintiff's attorney is the offender.

(Emphasis supplied.) OCGA § 9-10-185 was first codified in 1895,[9] and we have consistently interpreted and applied the "objection made" requirement as a *contemporaneous* objection to the alleged prejudicial statements. See *Stolte,* 291 Ga. at 482 (2) (b) ("The proper time to object to improper argument is when it occurs.") (citation and punctuation omitted); *Wright v. Wright,* 222 Ga. 777, 781 (4) (152 SE2d 363) (1966) ("When improper argument is made to the jury by an attorney for one of the parties, it is necessary, in order to make the same a basis for review, that opposing counsel, *during the trial*, properly object to such argument or invoke some ruling or instruction with reference thereto by the court.") (citation and punctuation omitted; emphasis supplied); *Ehrlich v. Mills*, 203 Ga. 600, 601 (4) (48 SE2d 107) (1948) ("When improper argument to the jury is made by an attorney for one of the parties, it is necessary, in

---

[9] See Civil Code 1895, § 4419. We note that the language of this statute is virtually identical to its criminal counterpart. See OCGA § 17-8-75. These Georgia statutes have no equivalent in the Federal Rules of Evidence.

19

order to make the same a basis for review, that opposing counsel should make objection to such argument or invoke some ruling or instruction with reference thereto by the court." (citations omitted)). The reason for requiring a contemporaneous objection under OCGA § 9-10-185 is the same as in other contexts: "A party [cannot] during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *Wright*, 222 Ga. at 781 (4) (citation and punctuation omitted). The defendants cite no case in which a pretrial motion in limine has been considered an "objection made" under OCGA § 9-10-185, and we decline to extend the meaning of that term here.

Relying on *Stolte*, the defendants assert that even if a timely objection was required to preserve the error for ordinary appellate review, appellate courts may still consider "whether the improper argument in reasonable probability changed the result of the trial." 291 Ga. at 483 (2) (b) (citation and punctuation omitted). However, in *Stolte*, we expressly questioned the validity of such review in civil cases because we had already determined that this type of review

does not apply in non-death penalty criminal cases. See id. at 483 (2) (b) n.4. Several years after *Stolte*, we reiterated that in non-death penalty criminal cases, there is no appellate review available, even for plain error,[10] when defense counsel fails to make a contemporaneous objection to a prosecutor's closing argument. See *Gates v. State*, 298 Ga. 324, 328-29 (4) (781 SE2d 772) (2016).

The issue of whether appellate review is available in civil cases to review a claim of allegedly improper argument in the absence of a contemporaneous objection is now squarely before us. We hold that there is no reason to review unpreserved claims of error in closing argument in civil cases and therefore overrule *Stolte* and other cases holding that such appellate review is available. Stare decisis considerations do not require a different conclusion. Under that doctrine, "courts generally stand by their prior decisions, because

---

[10] To establish plain error, the defendant "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Lopez v. State*, 310 Ga. 529, 555 (7) (852 SE2d 547) (2020) (citation and punctuation omitted).

doing so promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Henderson v. State*, 310 Ga. 231, 241 (3) (a) (850 SE2d 152) (2020) (citations and punctuation omitted). However, "stare decisis is not an inexorable command." *Pounds v. State*, 309 Ga. 376, 382 (3) (846 SE2d 48) (2020) (citation and punctuation omitted). "When we consider whether an earlier decision ought to be reexamined, we consider a number of factors, including the age of the precedent, the reliance interests involved, the workability of the prior decision, and most importantly, the soundness of its reasoning." Id. (citation and punctuation omitted). In doing so, "we must balance the importance of having the questions *decided* against the importance of having it decided *right*." *Henderson*, 310 Ga. at 241 (3) (a) (citation and punctuation omitted; emphasis in original).

We begin by addressing the origin of appellate review of unpreserved errors, which began with criminal appeals in death

penalty cases. In *Conner v. State*, 251 Ga. 113 (303 SE2d 266) (1983), this Court analyzed statements made by the prosecutor during closing argument in a death penalty case, without objection, to determine whether the prosecutor's "'dramatic appeal to gut emotion'" violated the Eighth Amendment or OCGA § 17-10-35 (c) (1).[11] *Conner*, 251 Ga. at 118 (5) (quoting *Hance v. Zant*, 696 F2d 940, 952-53 (VII) (11th Cir. 1983)). The Court concluded that the "'passion' proscribed by [OCGA § 17-10-35 (c) (1)] does not encompass all emotion, but only that engendered by prejudice, particularly racial prejudice, or other arbitrary factors[,]" and that the statement likewise did not violate the substantive and procedural protections of the Eighth Amendment. Id. at 121 (5) (footnote omitted) (disagreeing with *Hance* to the extent *Hance* holds that the death penalty may not be based in part on an emotional response to factors that "implicate valid penological justifications for

---

[11] This statute provides that, in reviewing a case in which the death penalty has been imposed, this Court "shall determine . . . [w]hether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor."

23

the imposition of the death penalty"). Two years later, this Court again addressed a claim that the prosecutor had argued improperly without objection in a death penalty case, and this time we announced that where the prosecutor argues improperly and no objection is interposed, "whether reversal is required depends upon an evaluation of prejudice that is undertaken in an essentially identical manner whether the improper arguments are considered directly or in the context of an ineffectiveness claim." *Ford v. State*, 255 Ga. 81, 90 (8) (i) (335 SE2d 567) (1985). Thus, we explained, the undertaking requires a determination of whether any portion of the prosecutor's argument was improper and, if so, whether the improper argument was so egregious as to require a new trial. See id. See also *Tharpe v. State*, 262 Ga. 110, 114 (16) (416 SE2d 78) (1992) (In a death penalty case, "[w]hen no timely objection is interposed, the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial.") (citation

24

omitted).

In 2001, this Court applied this standard for the first time to an unobjected-to improper closing argument made in a civil case. See *Mullins v. Thompson*, 274 Ga. 366, 367 (2) (553 SE2d 154) (2001) ("The time to object to improper closing argument is when the impropriety occurs at trial. When, as here, no timely objection is interposed, the test for reversible error is whether the improper argument in reasonable probability changed the result of the trial." (citations and punctuation omitted)). In doing so, we cited only *Benton v. Chatham County*, 206 Ga. App. 285, 288 (3) (425 SE2d 317) (1992), which had quoted and summarily applied *Tharpe* without any analysis as to whether that death penalty case's holding should apply in a civil condemnation case. See *Benton*, 206 Ga. App. at 288 (3). Since that time, this Court has applied this standard in civil cases only twice and never with any analysis as to whether it should be applied in civil cases. See *Moxley v. Moxley*, 281 Ga. 326, 328 (6) (638 SE2d 284) (2006) ("The test for reversible error under those circumstances is whether there is a reasonable probability the

improper argument changed the result of the trial."); *Stolte*, 291 Ga. at 483 (2) (b). And as noted above, in *Stolte*, we expressly questioned "the continued validity of the rationale for reviewing the merits of untimely objections to closing arguments in civil cases, when we do not conduct such a review in non-death penalty criminal cases." 291 Ga. at 483 (2) (b) n.4.

In sum, it appears that 20 years ago, this Court extended a principle of review from death penalty cases, which had statutory and constitutional roots, to civil cases, without any analysis or explanation. See *Mullins*, 274 Ga. at 367 (2). The significant unsoundness of this reasoning, which is the most important factor in our stare decisis consideration, cuts heavily in favor of overruling *Stolte, Moxley,* and *Mullins*. See *Olevik v. State*, 302 Ga. 228, 244 (2) (c) (iii) (806 SE2d 505) (2017) (noting lack of analysis and summary conclusion supported overruling cases); *Southall v. State*, 300 Ga. 462, 467 (1) (796 SE2d 261) (2017) (noting cursory analysis produced unsound and inconsistent interpretation); *State v. Hudson*, 293 Ga. 656, 661 (748 SE2d 910) (2013) (overruling holding that contained

no analysis). And although the holding announced in *Mullins* and followed in *Moxley* and *Stolte* may be "workable," the issue here is one "of appellate procedure, not contract, property, or other substantive rights in which anyone has a significant reliance interest." *Pounds*, 309 Ga. at 382 (3) (citation and punctuation omitted). Overruling these cases will course-correct an important aspect of appellate procedure by not affording, without a statutory or constitutional basis, civil litigants greater rights to appellate review than criminal defendants in non-death penalty cases. Finally, these holdings are "'neither ancient nor entrenched'" within our judicial system. *Southall*, 300 Ga. at 468 (1) (overruling 44-year-old precedent and explaining, "without more, that we have been wrong for many years is no reason to persist in the error" (citation and punctuation omitted)). See also *Woodard v. State*, 296 Ga. 803, 808-14 (3) (771 SE2d 362) (2015) (overruling 24-year-old interpretation of justification defense statute); *State v. Jackson,* 287 Ga. 646, 659-60 (5)-(6) (697 SE2d 757) (2010) (overruling nearly 29-year-old interpretation of felony murder statute). *Mullins* is only 20

27

years old, and the erroneous portion of *Mullins* has been followed by this Court only twice, with the most recent case flagging its likely infirmity. Accordingly, we hereby overrule *Mullins* and its progeny to the extent that they permit appellate courts to consider error based on unobjected-to argument at trial in civil cases.[12]

2. Having determined that a contemporaneous objection is required when the moving party believes a motion in limine has been violated during argument, we now turn to the application of this requirement to the particular facts of this case. The defendants argue that any application of the contemporaneous objection rule in this context should be prospective because it is a substantive change in the law. We need not decide this issue, however, because we conclude that even before our holding today, the defendants would have been required to make a contemporaneous objection to

---

[12] To the extent the Court of Appeals has relied on these erroneous holdings, those cases are likewise overruled, including *Auto-Owners Ins. Co. v. Dolan*, 342 Ga. App. 179, 184-85 (5) (803 SE2d 104) (2017); *Holloway v. Kroger Co.*, 335 Ga. App. 705, 706 (1) (a) (782 SE2d 805) (2016); *Young v. Griffin*, 329 Ga. App. 413, 415 (2) (765 SE2d 625) (2014); *Hamilton v. Shumpert*, 299 Ga. App. 137, 144 (3) (682 SE2d 159) (2009); and *Benton*, 206 Ga. App. at 288-89 (3).

Williams's statement during closing argument.

We begin by noting that a motion in limine to exclude evidence "should be granted only if there is no circumstance under which the evidence is likely to be admissible at trial." *Lewis v. State*, 306 Ga. 455, 461 (2) (a) (831 SE2d 771) (2019) (citation and punctuation omitted). Thus, "the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care." Id. (citation and punctuation omitted). For these reasons, we have explained that a motion in limine and ruling thereon must be narrowly tailored to the evidence and law applicable to each case:

> Although a party does not waive an error by failing to object to admission of evidence after a motion in limine is denied, this rule cannot be invoked to preserve a different, if perhaps related, error. To allow such a procedure would deprive the trial court of the opportunity to consider the error alleged, and take corrective action, if necessary.

*Battles v. State*, 290 Ga. 226, 232 (5) (719 SE2d 423) (2011) (citations and punctuation omitted). We are mindful that trial courts are in the best position to determine whether a particular matter violates a motion in limine, whether the violation is unduly prejudicial, and

29

what remedy is appropriate. See, e.g., *Harvey v. State*, 296 Ga. 823, 834 (2) (c) (770 SE2d 840) (2015) ("[T]he trial court was able to evaluate the tone, demeanor, and credibility of defense counsel, . . . something we cannot do from the cold record on appeal . . . ."). Thus, we review a trial court's determination of whether a ruled-upon motion in limine has been violated only for an abuse of discretion. See *Hawkins v. State*, 304 Ga. 299, 303-04 (4) (818 SE2d 513) (2018); *Forsyth County v. Martin*, 279 Ga. 215, 221 (3) (610 SE2d 512) (2005).

With these principles in mind, we conclude that the motion in limine at issue on certiorari — seeking to exclude "any statements, arguments, or evidence offered predominantly to overly inflame the emotions of the jury or to [e]llicit excessive or undue sympathy, hostility, or prejudice for or against either party" — was so vague and overly broad as to render it virtually meaningless as a vehicle to decide an issue before it was raised in context at trial.[13] Cf.

---

[13] We note that, under Federal Rule of Evidence 103 (b), when counsel is unsure whether a ruling on a motion in limine is sufficiently definite, the rule

*Higuera-Hernandez v. State*, 289 Ga. 553, 554-55 (2) (714 SE2d 236) (2011) (although defendant filed a general motion in limine, he failed to raise a specific objection to his cellmate's testimony until after the testimony was complete, and therefore failed to properly preserve the claim for appellate review); *Arnold v. State*, 249 Ga. App. 156, 160-61 (3) (545 SE2d 312) (2001) (where trial court's ruling on motion in limine limited State to presenting evidence that defendant was arrested on an outstanding warrant without identifying the specific offenses or the fact that he was arrested on a probation warrant, no abuse of discretion in finding that officer's testimony regarding a "felony outstanding warrant" did not require a mistrial). See also *Witty v. McNeal Agency, Inc.*, 239 Ga. App. 554, 557 (2) (a) (521 SE2d 619) (1999) (trial court properly denied motion in limine where motion was overly broad and not tailored to a legitimate

"imposes the obligation on counsel to clarify whether an in limine or other evidentiary ruling is definitive when there is doubt on that point." *United States v. Wilson*, 788 F3d 1298, 1313 (II) (A) (11th Cir. 2015) (citing Advisory Committee's Notes to Federal Rule of Evidence 103 (b)). In the future, counsel would be well advised to likewise apply this principle to motions in limine related to evidence and argument.

objection); Charles W. Gamble, The Motion In Limine*: A Pretrial Procedure That Has Come of Age*, 33 Ala. L. Rev. 1, 10-11 (1981) ("Most critics agree that [a motion in limine's] scope should be more like that of a rifle than a shotgun, pointing out the objectionable material and showing why the material is inadmissible and prejudicial." (citation and punctuation omitted)). Accordingly, we discern no abuse of discretion in the trial court's determination that Williams's statement during closing argument was not a violation of the court's ruling on the defendants' motion in limine. See *Harvey*, 296 Ga. at 834-35 (2) (c) (trial court, which is in the best position to observe the way in which argument was made to the jury, as well as the jury's reaction, has discretion to decide whether litigation conduct violates a ruling on a motion in limine). Cf. *Pruette v. Ungarino*, 326 Ga. App. 584, 591-92 (3) (757 SE2d 199) (2014) (trial court did not err in granting doctor's motion for new trial because plaintiff's expert pulmonologist impermissibly referenced doctrine of informed consent in violation of motion in limine order prohibiting any testimony regarding informed consent).

*Judgment reversed. All the Justices concur, except Peterson, J., disqualified.*

BETHEL, Justice, concurring.

I concur with the Court's well-reasoned opinion. I write separately to address the nature of the underlying motion in limine and to urge the cessation of a seemingly common practice in civil litigation – that is, the filing of generalized, vague, and overly broad motions in limine.

Here, we are considering a motion in limine that sought to preclude "any statements, arguments, or evidence offered predominantly to overly inflame the emotions of the jury or to [e]licit excessive or undue sympathy, hostility, or prejudice for or against either party." Indeed, while some of the 40 items in the defendants' omnibus motion in limine discussed specific expected evidence and argument, others were vague and simply restated basic law, such as item number 33 (the subject of this Court's opinion). This particular motion requested that the trial court generally exclude any evidence or arguments offered solely to prejudice the parties or that unduly

inflamed the passions of the jury, without pointing the trial court to any specifically prejudicial evidence or argument. Thus, the motion is simply an extended recitation of the trial court's authority.[14] But the defendants pointed to no specific expected evidence or argument connected to the case before the trial court that they sought to limit. As the trial court noted in addressing this item in the omnibus motion, in order for it to exclude or limit testimony or evidence on a Rule 403 basis, "some particularly proffered testimony or . . . evidence with some context" must be offered. Thus, the import of the motion is unclear. It certainly does not provide the intended benefits of motions in limine. Motions in limine exist to help narrow and define the questions that will be presented at trial and to assist the trial court and counsel in preparation for and execution of the trial.

Further, motions in limine can be useful in avoiding even the passing mention in front of the jury of improper or inadmissible

---

[14] For example, the Georgia Evidence Code already instructs trial courts on how to handle evidence when its probative value is substantially outweighed by its tendency to produce passion or prejudice. See OCGA § 24-4-403 ("Rule 403").

matters that are particularly prejudicial. A motion in limine that essentially asks the trial court to follow the law does not accomplish any of those ends.

Broad boilerplate motions like the one we consider here are often filed as a matter of course in civil litigation across Georgia and elsewhere, possibly extracted from a folder or brief bank containing similar motions without much consideration for their particular necessity or purpose in the case at bar.[15] Indeed, a review of the other motions in limine filed by both the defendants and plaintiff in this case reveals that this motion was not the only one of this kind filed in this action. Litigators are frequently creatures of habit, and many, knowingly or not, appear to live by the precept that what has been previously filed must always be filed. Clearly, the better practice is to file motions in limine that are tailored to the specific issues pending in a given case, such that a trial can proceed efficiently and undue prejudice can be avoided. When a boilerplate

---

[15] Of course, prior to our holding today, such a motion at least created a chance of a second bite at the apple in the event the movant failed to lodge a contemporaneous objection.

motion in limine cannot arguably serve those goals, lawyers should not file it and trial courts should reject it.

Decided May 17, 2021.

Certiorari to the Court of Appeals of Georgia — 354 Ga. App. 766.

*Powell & Erwin, William A. Erwin; Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Michael B. Terry; McCall Williams, W. Earl McCall; Henry Williams Law Office, Henry E. Williams; Law Offices of Gregory Terrell Williams, Gregory T. Williams*, for appellant.

*Holland & Knight, Laurie W. Daniel, Matthew D. Friedlander, Jonathan B. Spital; Swift Currie McGhee & Hiers, Roger E. Harris, Douglas L. Clayton; Kirbo & Kendrick, Bruce W. Kirbo, Jr.*, for appellees.

*Butler, Wooten & Peak, James E. Butler, Jr., Joel O. Wooten, Jr., Brandon L. Peak, Rory A. Weeks*, amici curiae.