**FIRST DIVISION
BROWN, C. J.,
BARNES, P. J., and WATKINS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 9, 2026**

# In the Court of Appeals of Georgia

A25A1573. IN RE THE ESTATE OF GEORGE EDWARD SAMUEL, DECEASED.

WATKINS, Judge.

This action arises from a petition to determine heirs filed by Devon Samuel, claiming to be acting in the capacity of the executor of the estate of his late father George Edward Samuel.[1] At issue is whether Delores Bowers (f/k/a Delores Samuel) or Rosemary Dailey Samuel was George's legal wife at the time he died. Following a three-day jury trial, the jury returned a verdict finding that George's marriage to Delores had been dissolved by divorce, which had the effect of recognizing Rosemary

---

[1] For ease of reference given the number of individuals sharing the same last name, we will refer to everyone by their first name.

as George's widow. Devon appealed. For the reasons contained herein, because there was some evidence to support the jury's verdict, we affirm.

"There is a presumption in favor of the validity of verdicts. And after rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict."[2]

So viewed, the record shows that George and Delores married in 1963. The couple had two children, including Devon. Delores moved out of the marital home with the two children and settled in Boston, and the children continued to have a relationship with and visit their father. George and Delores never lived together after 1969. Delores petitioned for divorce in Connecticut in 1970, but no evidence was presented that she further pursued that filing.

George met Rosemary in 1971, and the relationship turned romantic in 1972, even though both parties were married at the time. George and Rosemary then lived together until he died. They also worked together as truck drivers, driving the same truck cross-country.

---

[2] *Dillard v. Schilke*, 352 Ga. App. 158, 158 (2) (834 SE2d 278) (2019) (citation and punctuation omitted).

In 1973, Delores filed for separation and custody in Massachusetts. In 1981, Delores petitioned for divorce in Massachusetts. The parties dispute whether either of these actions resulted in the entry of a divorce decree, and as discussed further below, even different clerks of the probate court of Suffolk County, Massachusetts have provided conflicting accounts.

Rosemary's children from her prior marriage saw George and his children as family. George and his children would take trips with Rosemary and her children. Rosemary eventually divorced her husband in 1989. Tennessee issued a certificate of marriage to George and Rosemary in 2003, the legal import of which is at issue in this case.

After George's death in 2021, Devon, claiming to be executor of George's estate, filed a petition to probate will in solemn form, which petition identified Rosemary as George's "spouse." Devon subsequently amended the petition to identify Delores as George's "spouse." As a result of these conflicting claims, Devon filed a petition to determine heirs through which he sought a determination that Rosemary was not an heir of George. Rosemary opposed the petition. Devon moved for summary judgment, which the court denied.

The court held a jury trial on the petition to determine heirs, at which Devon, Delores, and Rosemary testified, as well as other family members of both George and Rosemary. Representatives of the law firms representing both Devon and Rosemary also testified about certifications they received from different employees of the Suffolk County, Massachusetts probate court. In the certificate proffered by Rosemary, the "Register of Probate" stated that in 1973 "a Judgment of Divorce Nisi was entered by the Court" in the proceeding Delores filed. Attached to that certificate was a petition for child support and an order awarding custody of the children to Delores. The attached order did not mention divorce. In the "Clerk's Certificate" proffered by Devon, a different "Register of Probate" certified that no judgment of divorce existed in the records for the 1973 or 1981 filings. Neither Rosemary nor Devon introduced testimony from any employee at the Suffolk County probate clerk's office explaining these contradictory documents.

The jury found that George's marriage to Delores was dissolved by divorce. Devon immediately moved for a judgment notwithstanding the verdict, which the trial court denied. Devon timely appealed.

4

1. Devon contends that the trial court erred in denying its motion for summary judgment.[3] "After verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case."[4] Accordingly, this claim of error presents nothing for us to review.

2. Devon also contends that the trial court erred in admitting the probate clerk's certificate proffered by Rosemary. According to Devon, the trial court should have excluded this certificate because it was "a facially and legally false document" that was presented by "a surprise witness."

As mentioned above, the parties each entered into evidence conflicting certificates, each received from a different "Register of Probate" of the Suffolk County, Massachusetts probate and family court regarding the marital status of George and Delores. The document submitted by Rosemary was titled "Certificate of Divorce Absolute" and stated that on May 8, 1973, "ninety days having expired

---

[3] We remind counsel of Court of Appeals Rule 25(a)(7), which provides that argument "should generally follow the order of the enumeration of errors" as it makes review by this Court easier.

[4] *City of College Park v. City of Sandersville*, 361 Ga. App. 529, 531 (1) (864 SE2d 680) (2021) (citation and punctuation omitted).

since the entry of the divorce nisi and the Court not having otherwise ordered, said Judgment of Divorce became Absolute." Attached to the certificate were a petition and order dated in 1973 for custody of the children.

Rosemary introduced this clerk's certificate at trial through the testimony of a law firm administrator who had spoken with someone in the Suffolk County probate court clerk's office "who confirm[ed] that there was a decree on file" which the "gentleman" then mailed to the witness. Upon learning that Rosemary intended to introduce the evidence this way, Devon initially objected on the grounds that the documents attached to the certificate were not filed in a divorce proceeding and that the proffering witness had not been previously disclosed. The trial court overruled the objection.[5] When Rosemary tendered the certificate, however, Devon did not renew his objection. Instead, Devon's attorney stated "I think it's properly authenticated, and I'll have questions about it, Your Honor. No objection."

> A party cannot acquiesce in a trial court's ruling below and then complain about that ruling on appeal. Acquiescence deprives [Devon] of the right to complain further; thus the issue is waived for purposes of appeal. … [A]lthough a party may have initially objected to an exhibit,

---

[5] Notably, in doing so, the trial court acknowledged that it had allowed Devon to introduce the Massachusetts certificate he was relying on in a similar fashion.

that party's failure to make a contemporaneous objection at the time the exhibit is re-tendered waives the objection. For these reasons, [Devon] waived the right to assert [his] objection to [the admissibility of] this exhibit on appeal.[6]

3. Devon contends that the trial court erred in denying his motion for new trial because there was no probative evidence to support the verdict. We disagree.

At the outset, we recognize that

[u]nder Georgia law, to be able to enter into a marriage, a person must have no living spouse of a previous undissolved marriage. The dissolution of a previous marriage in divorce proceedings must be affirmatively established and will not be presumed. Where a party to a ceremonial marriage has been previously married and the validity of the second marriage is challenged, a presumption arises that the second marriage is valid until evidence is adduced that the spouse of the first marriage is living, and only then does the law place the burden on the party contending that the second marriage is valid to go forward with the evidence and show that the first marriage was dissolved by divorce.[7]

---

[6] *Ahmed v. Clark,* 301 Ga. App. 426, 428 (688 SE2d 361) (2009) (citations and punctuation omitted).

[7] *Dillard*, 352 Ga. App. at 161-162 (2) (citations and punctuation omitted).

Here, it is undisputed that Delores is alive, so the burden shifted to Rosemary to establish that Delores and George were legally divorced. Devon contends that she failed to do so, but we find that the jury was authorized to find that Rosemary met her burden. There was ample evidence presented that George and Rosemary subjectively believed themselves to be married, as did many other members of their respective families. Devon is correct, however, that evidence of these subjective beliefs is legally irrelevant.[8]

It is also undisputed that Rosemary did not introduce a divorce decree as direct evidence of George's marital status. As we have previously held, however, that was not the only way for her to meet her burden.

> [A]ny fact can be proven through circumstantial evidence. … The standard for relying on circumstantial evidence is well settled: When a party is relying on inferences from circumstantial evidence to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but they must also render less probable all inconsistent conclusions. Stated differently, [w]here a [party] in a civil case supports [her] case solely by circumstantial evidence, before [she]

---

[8] Id. at 164 (2) n.1.

is authorized to have a verdict in [her] favor the testimony must be such as to reasonably establish the theory relied on.[9]

Because "[t]here must be more than a scintilla of circumstances to carry the case to the jury[,]" the trial court then had to decide if "the circumstances reasonably establis[ed] the hypothesis relied on by [Rosemary]."[10] Here, the trial court implicitly made such a decision by permitting admission of the certificate proffered by Rosemary.

After the trial court made this decision it was "then for the jury to say, either that [Rosemary had] not carried [her] burden of proof because the evidence equally [supported her] hypothesis and some other reasonable hypothesis, or that [Rosemary had] carried [her] burden of proof in that the evidence preponderate[d] to [her] hypothesis as against all other reasonable but less probable hypotheses.[11]

Here, Rosemary introduced a document from a "Register of Probate" certifying that Delores obtained a divorce from George in 1973. She also introduced a marriage

---

[9] *Dillard*, 352 Ga. App. at 162-163 (2).

[10] Id. at 163 (2).

[11] Id. at 162-163 (2) (citations and punctuation omitted).

certificate issued by Tennessee which, on its own may have not been sufficient to establish proof of George's divorce,[12] but which demonstrates a government agency's recognition of George as someone legally capable of entering into a marriage. Devon attacked Rosemary's evidence and presented his own conflicting evidence, but viewing all the evidence and every presumption and inference arising therefrom in the light most favorable to the verdict, we hold that the jury was authorized to find that the evidence preponderated to Rosemary's hypothesis that George was legally divorced.

4. Devon contends that the trial court erred in charging the jury. We disagree.

At the request of Rosemary, the probate court charged the jury "[w]hile the divorce decree would be direct evidence of the dissolution of the first marriage, any fact can be proven through circumstantial evidence." The jury had previously been charged on the definition of circumstantial evidence. Devon takes issue with both the substance of the charge and the timing of Rosemary's request for the charge.

> [W]e review de novo an allegedly erroneous jury instruction, which is a question of law. And in assessing the assertion of an erroneous

---

[12] The record is silent as to what, if any, evidence was necessary to obtain the marriage certificate in Tennessee.

jury instruction, the instruction must be evaluated in the context of the trial court's jury instructions as a whole. Indeed, the only requirement regarding jury charges is that they were, as given, correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence.[13]

As to the substance of the charge, the charge was a correct statement of the law, as discussed in Division 3 above, and thus giving it was not error.

As to the timing, Rosemary first requested this specific charge after closing arguments, which undisputedly did not comport with the scheduling order entered by the court. The trial court had the authority, however, to modify the scheduling order at the trial,[14] which it effectively did by permitting the late jury charge submission. Devon also argues that Rosemary's request was untimely pursuant to OCGA § 5-5-24(b), which provides:

> In all cases, at the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may present to the court written requests that it instruct the jury on the law as set forth therein. Copies of requests shall be given to opposing counsel for their

---

[13] *Scott v. Turner*, 375 Ga. App. 396, 399 (915 SE2d 704) (2025) (citations and punctuation omitted).

[14] See OCGA § 9-11-16(b).

consideration prior to the charge of the court. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury but shall instruct the jury after the arguments are completed.

According to [Devon], OCGA § 5-5-24(b) requires us to find error in the giving of [the challenged] charge. The Code section provides ... that the trial court should inform counsel of the charges it intends to give before closing argument. It would elevate form over substance, however, to preclude the trial court from giving an additional jury charge when the court believes it is necessary to clarify an issue of which the parties were clearly aware prior to trial.[15]

The record clearly demonstrates that the parties were aware of this legal issue prior to trial, as Rosemary did not have direct evidence to establish her claim. Accordingly, we find no error with the timing of the trial court's acceptance of this requested charge.

---

[15] *Swanson v. Hall*, 275 Ga. App. 452, 455 (2) (620 SE2d 576) (2005) (citations omitted).

5. Devon contends that the trial court erred by not ruling on which party had the burden of proof before the presentation of evidence. Devon provided no argument or case citations to support this claim of error; thus, it is abandoned.[16]

6. Lastly Devon claims that the trial court erred by allowing "improper and prejudicial" argument for sympathy in Rosemary's closing argument. Devon waived this argument by failing to object at trial.

It has long been held that "[w]hen improper argument to the jury is made by an attorney for one of the parties, it is necessary, in order to make the same a basis for review, that opposing counsel should make objection to such argument or invoke some ruling or instruction with reference thereto by the court."[17]

*Judgment affirmed. Brown, C. J., and Barnes, P. J., concur.*

---

[16] *Healthcare Staffing, Inc. v. Edwards*, 360 Ga. App. 131, 135 (2) (860 SE2d 874) (2021) ("The rules of this Court are clear that any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned. It is not the job of this Court to find legal authority to support a party's claim of error, nor would it be appropriate for us to do so.") (citations and punctuation omitted); Court of Appeals Rule 25(d)(1).

[17] *Ehrlich v. Mills*, 203 Ga. 600, 601 (4) (48 SE2d 107) (1948). "The reason for requiring a contemporaneous objection [is because a] party cannot during the trial ignore what [it] thinks to be an injustice, take [its] chance on a favorable verdict, and complain later." *Williams v. Harvey*, 311 Ga. 439, 448(1)(b) (858 SE2d 479) (2021) (citation and punctuation omitted).